Michael J. GUIDRY, Plaintiff,

v.

KEM MANUFACTURING COMPANY, Defendant.

DRACKETT PRODUCTS COMPANY et al., Defendants-Third Party Plaintiffs-Appellants,

v.

KEM MANUFACTURING COMPANY et al., Third Party Defendants-Appellees.

No. 77–1492.

United States Court of Appeals, Fifth Circuit.

July 6, 1979.

Harry McCall, Jr., Corinne Morrison Hopkins, Lloyd C. Melancon, New Orleans, La., for Drackett Products Co.

Wood Brown, III, New Orleans, La., for Kem Manufacturing Co.

James H. Drury, New Orleans, La., for Baudouin et al.

Before GODBOLD, Circuit Judge, SKELTON *, Senior Judge, and RUBIN, Circuit Judge.

ALVIN B. RUBIN, Circuit Judge:

Invoking diversity jurisdiction, an injured user brought a products liability suit against two manufacturers whose chemicals for clearing plumbing drains harmed him when they were inadvertently mixed together in a kitchen sink. The trial court required the jury to return a special verdict as authorized by Rule 49(a), Federal Rules of Civil Procedure, by answering separate interrogatories relating to the plain-

---

* Senior Judge of the United States Court of Claims, sitting by designation.

tiff's claims against each defendant and additional questions arising out of the cross-claims for contribution and indemnity brought by one defendant against the other. The resulting judgment in favor of the plaintiff against one defendant has been satisfied after remittitur. The defendant cast in judgment, however, contends that the jury's answer concerning its cross-claim for contribution against the other manufacturer was inconsistent with its answer concerning that manufacturer's liability to the plaintiff, and seeks reversal of the judgment entered by the trial court denying contribution. Because we agree that the jury's answers were inconsistent and can find no reasonable resolution for the apparent inconsistency, we reverse and remand for a new trial on the cross-claim.

## I.

Michael Guidry, who was employed by the Archdiocese of New Orleans to do maintenance work at the Jesuit Church in downtown New Orleans, poured Thermakem, a drain cleaning product made by Kem Manufacturing Co., into a sink drain. The liquid in the drain erupted, seriously injuring him. The jury found that the accident occurred when Thermakem was unintentionally mixed with Drano, a drain cleaner made by Drackett, that was already in the sink.[1]

The stage was set for the accident when one of the church cooks used Drano in an effort to clear a troublesome drain on the evening of Saturday, March 4, 1972. When the drain clogged again on Monday, a priest asked Guidry to attend to it, but said nothing about the efforts made on Saturday. Guidry used Thermakem for the job. The eruption that resulted burned him severely and caused a significant impairment of his vision. He sued both Kem and Drackett, and Drackett cross-claimed against Kem

seeking indemnity on the basis that Kem was actively negligent and it was only passively negligent; it urged alternatively that Kem was a joint tort feasor responsible under Louisiana law for contribution. The pre-trial order briefly mentioned the demand for contribution and indemnity. It simply noted that Drackett listed as a contested issue of law whether it was entitled to recover from third-party defendants.

At the trial no mention was made of the theory that Drackett and Kem might be joint tort feasors; Drackett put its energies into efforts to defeat the plaintiff and, if it lost, to recover the total judgment from Kem on the basis that Kem owed it indemnity. There was no instruction whatever on contribution and no objection to its omission.

On the basis of the jury's answers to special interrogatories, the court entered judgment for Guidry with respect to his claims against Drackett, and against Drackett with respect to its claims against Kem. Drackett appeals only the judgment entered by the trial court rejecting its claims for contribution from Kem.

The first interrogatory to the jury was in connection with Guidry's claim:

1. Was the product supplied by defendant Kem Manufacturing Company (Kem) defective, or did defendant Kem breach its implied warranty or negligently fail to warn plaintiff, in a manner which was a proximate cause of injury to plaintiff Mr. Guidry?

The answer was "No." The jury, however, answered affirmatively a similar interrogatory concerning Drackett. Therefore only Drackett was cast in judgment to the plaintiff. The jury awarded Guidry $1,500,000 against Drackett and that judgment, after its remittitur to $711,417.81, has been satisfied.

---

1. Evidence was introduced at the trial to explain why the eruption occurred. Thermakem contains 93% sulfuric acid. It unclogs drain pipes by dissolving organic obstructions. In use it generates heat ranging from 150 to 200 degrees Farenheit. Sulfuric acid is highly reactive, especially with alkaline chemicals, such as sodium hydroxide, commonly known as caustic soda. Drano, like many other drain opening products, contains a large proportion of caustic soda. The alkalinity of caustic soda does not change with time alone. Therefore, if caustic soda is present in a drain, even for a period of days, it will still violently react when combined with sulfuric acid.

Because counsel and the court focused their attention on the indemnity issue, the interrogatory to the jury with respect to the cross claim asked:

7. Was third-party defendant Kem Manufacturing Company actively negligent in a manner which was a proximate cause of injury to plaintiff?

The jury answered "Yes." Thus the answers to questions 1 and 7 are apparently inconsistent: Kem was "actively negligent in a manner which was a proximate cause of injury" to Guidry (No. 7), but its product was not "defective" nor did it "breach its implied warranty or negligently fail to warn plaintiff, in a manner that was a proximate cause of injury" to him (No. 1). Despite the evident problem created by those answers neither party requested resubmission of any question to the jury.[2]

Drackett urges that appearances are deceiving and that, correctly interpreted, the answers to the two questions can be reconciled; alternatively it contends that the contribution issue was omitted, hence was to be decided by the court.

## II.

Most civil jury cases in federal courts have been, and still are, resolved by a general verdict. After receiving the court's instructions, the jury weighs the facts in light of the court's instructions and renders a verdict for the plaintiff or the defendant. Judges and lawyers and all laymen who have thought about the process know that this permits the jurors to import notions of lay justice, to temper legal rules and to render a verdict based on their consciences and their ideas of how the case ought to be decided without strict compliance with the rules laid down by the court. This flexibility is a deliberate part of the jury system, and is sanctioned so long as there is sufficient evidence to support the verdict regardless of the judge's agreement or disagreement with the outcome. If the trial judge is convinced that the result is con-trary to the verdict that reasonable people would have reached, *cf. Trawick v. Manhattan Life Insurance Co.,* 5 Cir. 1971, 447 F.2d 1293, he may grant a new trial. In most instances of course, he abides by the verdict of the jury.

Rule 49 makes available alternate procedures that may be adopted by the trial judge to focus the jury's attention on the factual issues: a general verdict accompanied by answers to interrogatories about particular issues in the case (Rule 49(b)); or, dispensing altogether with the general verdict, submission of the various fact issues to the jury in the form of questions with the answers forming a special verdict on each (Rule 49(a)). *See generally* 5A Moore's Federal Practice ¶¶ 49.02–49.06 (2d ed. 1977); 9 C. Wright and A. Miller, Federal Practice and Procedure: Civil §§ 2505–13 (1971). The latter procedure was chosen by the trial court here.

█ The special verdict permitted by Rule 49(a) is a splendid device for clarification of jury verdicts and for focusing the jurors' attention on the disputed facts without the possible confusion that may result from a lengthy charge concerning the different legal rules that would apply if the jury reaches one factual conclusion rather than another. Therefore, we have repeatedly and frequently praised its use. *See, e. g., Gainesville Utilities Department v. Florida Power & Light Co.,* 5 Cir. 1978, 573 F.2d 292, 294 n.3, *cert. denied,* 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424; *Cormier v. Rowan Drilling Co.,* 5 Cir. 1977, 549 F.2d 963, 967; *American Oil Co. v. Hart,* 5 Cir. 1966, 356 F.2d 657, 659 and n.5; *See also* Brown, *Federal Special Verdicts: The Doubt Eliminator,* 1968, 44 F.R.D. 338; Wright, *The Use of Special Verdicts in Federal Court,* 1965, 38 F.R.D. 199. However, like all fine tools, it must be skillfully employed and its successful use requires the careful attention of counsel for all parties as well as of the court to be certain that the

---

**2.** Perhaps the $1.5 million eruption so stunned them that their reactions were slowed, but this is mere speculation.

questions are framed to avoid the possibility of inconsistent answers. This case demonstrates the problems that arise if it is used without the requisite care.

Under the state practices that constituted the models for Rule 49(a), the form of the question was the "hardest point of the practice." *Moore, supra,* ¶ 49.03[2] at 2210. The rule mandates no particular form for the questions, stating only that they shall be "susceptible of categorical or other brief answer," or that the court may "use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate."

As Chief Judge John R. Brown has noted, the Rule 49(a) special verdict is not "an error-proof, thought-proof, mechanical device. It has its pitfalls, nearly all due to its virtues. Its capacity for precision, excision of fact and legal issues, is at once its danger area. For nothing is so wrong as imprecise precision nor so glaring as conflicting precision." *Brown, supra,* 44 F.R.D. at 349. Its very accuracy makes it unsuitable for indifferent use; unless carefully aimed the questions miss the target completely.

The rule itself provides insurance against one hazard: the necessity that the jury decide every element of recovery or defense lest the verdict remain incomplete and indecisive. If counsel do not timely request that an issue be submitted to the jury, it may be resolved by the court. If the court fails to make a finding, "it shall be deemed to have made a finding in accord with the judgment on the special verdict." F.R. Civ.P. 49(a).

■ It is critical, however, that the structure of the questions and proposed answers avoid the possibility that the answers will be conflicting. That danger is mitigated by the court's duty, arising from the seventh amendment guarantee of the right to jury trial, to reconcile apparently conflicting answers if at all possible and thus validate the jury verdict. *Gallick v. Baltimore & Ohio Railroad Co.,* 1963, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618, 627; *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 1962, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 806. We have applied this rule countless times. *E. g., Willard v. The John Hayward,* 5 Cir. 1978, 577 F.2d 1009; *Loffland Brothers Co. v. Roberts,* 5 Cir. 1967, 386 F.2d 540, *cert. denied,* 1968, 389 U.S. 1040, 88 S.Ct. 778, 19 L.Ed.2d 830. Where, however, the answers cannot be reconciled "after a concerted effort" *Miller v. Royal Netherlands Steamship Co.,* 5 Cir. 1975, 508 F.2d 1103, 1106, a new trial must be granted. *E. g., Griffin v. Matherne,* 5 Cir. 1973, 471 F.2d 911; *Hand v. United States,* 5 Cir. 1971, 441 F.2d 529; *Royal· Netherlands Steamship Co. v. Strachan Shipping Co.,* 5 Cir. 1966, 362 F.2d 691, *cert. denied,* 1967, 385 U.S. 1004, 87 S.Ct. 708 and 710, 17 L.Ed.2d 543.

■ Decision may not be avoided on the basis that the claim for contribution was waived. Under Louisiana law,[3] if the

---

**3.** Louisiana Civil Code article 2103 provides:

> When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi contract, an offense, or a quasi offense, it should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation.
>
> A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or

denies liability on the obligation sued on by the plaintiff.

The term "in solido" is defined in LSA Civil Code art. 2324:

> He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, *in solido,* with that person, for the damage caused by such act.

See generally *Equilease Corp. v. Smith Int'l, Inc.,* 5 Cir. 1979, 588 F.2d 919, 923; *Reeves v. Louisiana & Ark. Ry. Co.,* La.1973, 282 So.2d 503; *Dixon v. Gutnecht,* La.App.1976, 339 So.2d 1285, 1291–92, *cert. denied,* La.1977, 342 So.2d 673; Comment, *Contribution Among Joint Tortfeasors: Louisiana's Past, Present, and Future,* 37 Tul.L.Rev. 525 (1963); Comment, *Contribution Among Joint Tortfeasors,* 22 La.L.Rev. 818 (1962).

facts adduced at trial create liability between co-defendants as joint tort feasors, a claim for contribution may be urged for the first time even on appeal. A joint tort feasor may seek contribution by appealing from a judgment relieving his co-defendant of liability even though no third party demand was initiated in the trial court, because such an appeal is tantamount to a third party demand. *Emmons v. Agricultural Insurance Co.,* 1963, 245 La. 411, 158 So.2d 594, 600; *Cunningham v. Hardware Mutual Casualty Co.,* La.App.1969, 228 So.2d 700, 704.[4]

Louisiana Civil Code article 2103 makes the issue of contribution between joint tort feasors one of law, to be resolved by the court in accordance with the factual findings. *Cf. Trahan v. Highlands Insurance Co.,* La.App.1977, 343 So.2d 1163, 1165–66, *cert. denied, La.,* 346 So.2d 208. This question in Louisiana practice is in most instances decided by the court—not the jury. *Cf. Green v. Taca International Airlines,* La.1974, 304 So.2d 357, 359. *Compare, e. g., Brandt v. Olson,* N.D.Iowa 1961, 190 F.Supp. 683, 688–89. Here, it was proper to allow the jury to resolve the question whether either or both of the defendants were liable to Guidry.

The answer to question 7 may reflect the jury's intention to deny any recovery on the third party indemnity demand by Drackett against Kem;[5] but it also demonstrates a view of the facts patently contrary to that reflected in the answer to question 1. The fact analysis reflected by the negative answer to question 1 is, "Kem was not negligent." The fact analysis essential to the positive answer to question 7 is, "Kem *was* actively negligent."

The question whether Kem was negligent was not omitted. It was put, at least implicitly, not once but twice. Therefore, the issue could not be resolved by the trial judge under that provision of Rule 49(a) permitting him to decide pretermitted questions. Nor could the court decide the issue of contribution because of the inconsistent answers.

### III.

With characteristic pithiness, Chief Judge Brown has said that, in constructing the Rule 49(a) special verdict, "[T]he Judge is forced to think, and think hard." With the help of counsel, he must begin "by anticipating all of the likely, probable answers and then testing these several likely results against the possible existence of conflict." 44 F.R.D. at 351.

When an appellate court decides that a new trial is required, the trial court is reversed. Often, as here, the fault is not in the court. The cross-claim by Drackett raised legal issues almost overlooked at the trial and ignored in the special verdict. Trial counsel for either party might have obviated the necessity for this appeal and for the partial new trial that must ensue had they, before the case went to the jury, directed the court's attention to those issues or assisted the court by more careful attention to the specific questions framed by the court. After the verdict, they could have sought resubmission to the jury. On all of these matters, the trial judge is neither expected nor required to rely only on his own comprehension, thoroughness and prescience.

---

4. We need not decide whether even in a diversity case Louisiana substantive law would support the use of that procedure in federal court, in view of the requirement of Rule 12(b), F.R. Civ.P., that cross-claims be asserted in the responsive pleading, because contribution was sought by the pleadings. *Compare Travelers Ins. Co. v. Busy Elec. Co.,* 5 Cir. 1961, 294 F.2d 139, 149. It is not even claimed, as it would be fruitless to do, that the carelessness of all counsel in failing to seek a verdict focused on the issue constituted a waiver by Drackett alone.

5. Kem contends that because no claim for indemnity lies between one manufacturer and another in Louisiana, the indemnity issue should not have been submitted to the jury, and that the court's charge on indemnity was erroneous and confusing. We need not assess the accuracy of this fusillade; fact questions were submitted to the jury. These answers are what we must appraise.

We are aware that the trial court fell into a snare that it did not construct and that our conclusion requires part of a lengthy trial to be repeated. Nevertheless because the jury's answers to the questions reflect inconsistent fact findings, we must reverse the judgment in favor of Kem on Drackett's cross-claim for contribution and remand for a new trial with respect to that issue.

REVERSED AND REMANDED.