DAN M. LEE, Justice,
for the court:
First Bank of Southwest Mississippi appeals a $20,000.00 judgment entered against it in the Circuit Court of Pike County-
On September 15, 1983, Bernard C. Bid-well brought suit against the Bank alleging a breach of contract and negligence.
The complaint alleged that Bidwell and his father, B.W. Bidwell, on or about March 30, 1982 leased a safe-deposit box at the bank as joint tenants with right of surviv-orship. Bidwell alleged that after B.W. Bidwell died on or about October 12, 1982, the bank wrongfully allowed Shirley R. Dykes, B.W. Bidwell’s roommate, to enter the safe-deposit box and remove the contents of the box. Bidwell sought damages in the amount of $79,168.00 and sought punitive damages in the amount of $20,-000.00.
At the close of the trial, a special interrogatory was submitted to the jury to determine the amount of cash in the safe deposit box. The jury returned the interrogatory, answering that there was $8,700.00 in the box. However, the jury also returned a general verdict for actual damages in the amount of $20,000.00. Defendant bank moved for a reconciliation of verdict and judgment to reflect a judgment in the amount of $8,700.00, then moved to amend the verdict to reflect an award consistent with the interrogatory pursuant to M.R.C.P. 59(e). Both motions were denied by the trial court.
The Bank appeals assigning four errors, all related to its argument that judgment should only have been entered in favor of Bidwell in the amount of $8,700.00 — the amount of cash the jury found to be taken from the safe deposit box in its answer to the interrogatory. We do not agree, but we find the unique factual situation and obvious confusion present requires reversal for a new trial on the issue of damages alone.
FACTS
Bernard Bidwell opened a safe-deposit box with his father as a joint tenant on March 30,1982. Their agreement was with First Bank of Southwest Mississippi (hereinafter the Bank), the defendant below. At trial Bidwell was granted a peremptory instruction to the effect that the Bank had breached its contractual agreement and had been negligent in allowing someone other than Bidwell or his father to enter the safe-deposit box.
The only dispute on appeal concerns the amount of damages assessed against the Bank for the breach of its duties.
Bernard Bidwell testified that he placed $8,700.00 in cash in the safe-deposit box on March 30, 1982, the same day he and his father opened the box.
Bernard had wanted the box as a place to keep B.W. Bidwell’s money while he was recuperating from a mild heart attack in Beacham Hospital.
The Bank maintained a signature card for signatures of those seeking entrance to the box.
*365 The card reflects, and Bernard testified, that he entered the box only on March 30, 1982 when he put the $8,700.00 in the box, and on February 11, 1983, when he closed the box.
However, the card reflects that B.W. Bidwell also entered the box on two different occasions; April 14, 1982, and May 12, 1982. Bernard testified that April 14, 1982 was the day the elder Bidwell was released from the hospital after his heart attack. B.W. Bidwell died October 12, 1982.
The signature card also reflects that a Shirley Bidwell entered the box on October 14, 1982, two days after B.W. Bidwell’s death. The record is unclear as to whether Shirley was actually married to B.W., but it appears she was merely using B.W.’s name. Bernard testified that Shirley Bid-well was Shirley Dykes, who lived with B.W. in his mobile home near Osyka along with Dykes’ two small children.
Bernard Bidwell did not know of Shirley Dykes’ entry until he went to close the box on February 11, 1983. At that time the box was empty.
There was additional proof that B.W. Bidwell was holding $20,000.00 in cash in trust for Bernard, and Bernard did not see this money after B.W. Bidwell made his last visit to the safe-deposit box. Bernard also testified that his automobile title might have been in the box.
Bernard’s testimony concerning when he last saw the $20,000.00 in cash was contradicted by his testimony in two different depositions, but Bernard withdrew those statements at trial.
Gail Smith, the bank employee who allowed Shirley Dykes access to the box, testified that she had no idea what, if anything, Ms. Dykes took out of the box.
LAW .
This case presents an abundance of confusion. There is confusion evident in the jury’s verdict, and the briefs of counsel evidence confusion with the procedure for having the jury render special verdicts under M.R.C.P. 49(b).
There was an obvious inconsistency in the jury’s answer to the interrogatory and its award of actual damages. This inconsistency was fostered by the instructions.
Instructions D-3 and D-6 required the jury to determine the amount of cash in the box. Instruction D-3 provided:
The person or party who claims that certain facts exist, must prove them by a preponderance of the evidence. This obligation is known as the burden of proof. The burden of proof is upon the Plaintiff to prove what was in the lockbox on October 14, 1982, and that it was removed at that time by Shirley Bidwell.
If he fails to establish by a preponderance of the evidence the amount of cash, if any, was in the lockbox on October 14, 1982, and that it was removed at that time by Shirley Bidwell, then you should find for the Defendant.
Instruction D-6 provided:
If you find for the Plaintiff, Bernard C. Bidwell, then you must also determine from a preponderance of the evidence what cash, if any, was in the lockbox on October 14,1982, and removed by Shirley Bidwell, and the form of your verdict may be, to wit:
“We, the jury, find that there was cash in the lockbox on October 14,1982, in the sum of $_ which was removed by Shirley Bidwell.”
writing your answer in the special interrogatory given you with these instructions for that purpose.
The jury returned the special interrogatory, finding that there was $8,700.00 removed from the box.
However, the jury was also instructed that it could return a verdict for actual damages. The jury was instructed by Instruction P-3 that:
If you reach a verdict in this case, it should be written on a separate piece of paper, need not be signed by you, and may be in either of the following forms:
*366 If you find for the plaintiff,
“We, the jury, find for the Plaintiff and assess his actual damages at $_”
If you find for the Defendant,
“We, the jury, find for the Defendant.”
As noted, by the answer to an interrogatory, the jury determined that there was $8,700.00 in cash in the box which Shirley Dykes removed. It also determined Bernard’s actual damages to be $20,000.00.
The only proof of damages other than cash taken from the box is an unexplained statement by Bernard Bidwell that he thought his automobile title was in the box before he discovered that the box was empty. On this record, it seems clear that the $20,000.00 verdict could only have been based on a finding by the jury that B.W. Bidwell put the $20,000.00 in cash he was holding in trust for Bernard into the box. This of course conflicts with its answer to the interrogatory that only $8,700.00 was removed from the box by Shirley Dykes.
There can be no reconciliation of these verdicts. We cannot say that either part of the jury’s response was surplusage or that the intent of the jury can be understood from the form of these verdicts. See Harrison v. Smith, 379 So.2d 517 (Miss.1980); Powell v. Thigpen, 336 So.2d 719 (Miss.1976); Henson Ford, Inc. v. Crews, 249 Miss. 45, 160 So.2d 81 (1964). See Miss. Code Ann. § 11-7-157 (1972).
The Bank argues that the interrogatory controls over the verdict for actual damages. This argument focuses our attention on an apparent misunderstanding of M.R.C.P. 49(b), which allows the trial court to utilize special verdicts. This provision is different from Fed.R.Civ.P. 49(b), which allows the trial court to pose interrogatories in conjunction with a general verdict. Mississippi has no parallel provision in its rules of procedure, but it appears the trial court here might have attempted to elicit a general verdict with an accompanying interrogatory. This was improper.
The Bank may be correct that Instruction P-3 should not have been given in that form in light of the absence of evidence of damages other than monetary loss of cash taken from the box.
Instruction P-3 and other instructions which correctly stated abstract principles of contract and negligence damages thus may have been misleading in this case. See Nielson v. Miller, 259 So.2d 702 (Miss.1972); Freeze v. Taylor, 257 So.2d 509 (Miss.1972). However, this does not mean that we should disregard the jury’s finding of damages in favor of its other finding.
Were we to consider the two verdicts as conflicting special verdicts, as provided for in our procedural rules, we would not choose one verdict over the other. Our Rule 49(b) is similar to Fed.R.Civ.P. 49(a). When faced with conflicting responses in special verdicts under the federal rule, it is generally held that a new trial is required. See Guidry v. Kem Mfg. Co., 598 F.2d 402, 406, on reh’g 604 F.2d 320 (5th Cir.1979); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2510 at 517 (1971).
While special findings may supersede an inconsistent general verdict under Fed.R. Civ.P. 49(b) see Wright & Miller, supra, § 2513 at 529-30, such is not normally the case with special verdicts.
Based on the obvious confusion inherent in the jury’s response, this case is reversed. Since no appeal is taken from the peremptory instruction as to the Bank’s liability, a new trial is granted to determine damages only.
REVERSED AND REMANDED FOR NEW TRIAL ON THE ISSUE OF DAMAGES.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.