791 F.2d 1416
 DIAMOND SHAMROCK CORPORATION, a Delaware Corporation,
Plaintiff-Appellant, Cross-Appellee,
v.
ZINKE & TRUMBO, LTD., a business association, Robert M.
Zinke, an individual, and David B. Trumbo, an
individual, Defendants, Counterclaimants-Appellees,
and Morris A. Richardson, John Hamilton and Martha Francis,
Counterclaimants- Cross-Appellants.
 Nos. 85-1698, 85-1803.
 United States Court of Appeals,
Tenth Circuit.
 May 21, 1986.
Rehearing Denied July 16, 1986.
 
 Richard K. Books (H.B. Watson, Jr., and Sharon L. Thomas with him on briefs), Watson & McKenzie, Oklahoma City, Okl., for plaintiff-appellant/cross-appellee.
 Richard C. Ford (Gary W. Davis, James U. White, Jr., and L. Mark Walker with him on briefs), Crowe & Dunlevy, Oklahoma City, Okl., for counterclaimants/cross-appellants.
 Before BARRETT, McKAY and TACHA, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 This appeal and cross-appeal is from a judgment containing an interlocutory order, duly certified pursuant to Fed.R.Civ.P. 54(b). Our jurisdiction vests pursuant thereto and by virtue of 28 U.S.C. Sec. 1292(b). There are many issues presented in this complex diversity based case. However, only one is dispositive. That involves a party's failure to object to a jury's general verdict on the ground of inconsistency prior to the discharge of the jury.
 
 I.
 Factual Background
 
 2
 Appellees John Hamilton and Martha Francis own three-fourths of the mineral estate underlying a 640 acre tract situate in Ellis County, Oklahoma, described as Section 33, Township 23 N., Range 26 W. Their interest was leased to Diamond Shamrock. The remaining one-fourth interest is owned by appellee Morris Richardson, who leased his interest to Zinke and Trumbo, Ltd. The Oklahoma Corporation Commission established Section 33 as a 640 acre drilling and spacing unit for production from the Morrow formation.
 
 
 3
 In 1981, Diamond Shamrock, as 100 percent working interest owner, drilled and completed a well producing from the Morrow formation situate in Lipscomb County, Texas, known as the Travis Well. This well is adjacent to Section 33, supra. In September of 1981, Diamond Shamrock proposed the drilling of the Hamilton No. 1-33 at a location in the SW 1/4 of Section 33. Zinke and Trumbo requested that Diamond Shamrock drill the well as an offset to the Travis Well in order to protect them from drainage resulting from production from the Travis Well. Diamond Shamrock agreed and obtained a location exception from the Commission to drill the Hamilton No. 1-33 Well 317 feet from the south line and 367 feet from the west line in the SW 1/4 of Section 33. Diamond Shamrock and Zinke and Trumbo entered into a Joint Operating Agreement whereby Diamond Shamrock was designated as operator. The well was drilled by Diamond Shamrock to the Morrow formation and completed in September, 1982. It was reported by Diamond Shamrock as a shut-in gas well awaiting a pipeline connection. No gas has been produced and sold from the Hamilton 1-33 Well.
 
 
 4
 In the course of completion operations, a dispute arose between Diamond Shamrock and Zinke and Trumbo relative to completion procedures. This resulted in the instant litigation. On October 12, 1982, Diamond Shamrock sued Zinke and Trumbo under the terms of the Operating Agreement (breach of contract claim) for the proportionate share of costs and expenses incurred in the drilling and completion of Hamilton 1-33 Well in amount of $133,551.71, together with further accruing costs, interest thereon, costs of the action and a reasonable attorney's fee. In addition, Diamond Shamrock sought an order of foreclosure on Zinke and Trumbo's leasehold interests in satisfaction of the claim.
 
 
 5
 Zinke and Trumbo answered and denied any liability. On June 28, 1983, Zinke and Trumbo, as defendant, joined by Morris A. Richardson, John Hamilton and Martha N. Francis filed a Counterclaim against Diamond Shamrock alleging that they had been damaged because of the negligence and gross negligence of Diamond Shamrock in the completion of the well. Specifically, they alleged that Diamond Shamrock's completion attempt of the Hamilton 1-33 Well "[w]as not done in a good and workmanlike manner despite suggestions, warnings, demands, protests, and objections from Zinke and Trumbo" and that Diamond Shamrock's "[c]ompletion attempt of the John Hamilton # 1-33 Well irreparably damaged the productive strata ... [the Morrow formation at 8862' - 8874'] ... underlying Section 33, by fracing into the salt water bearing strata and contaminating the productive strata with salt water constituting alleged gross neglect and willful misconduct." R., Vol. I, pp. 59, 60. Counterclaimants John Hamilton and Martha Francis sought actual and punitive damages for Diamond Shamrock's alleged breach of implied covenant of their oil and gas leases to protect against drainage and to market production from the well.
 
 
 6
 The Counterclaim further alleged that: due to the limited size of the reservoir and geological and economic conditions, a replacement well cannot be drilled on Section 33; Hamilton 1-33 Well is noncommercial; counterclaimants own no interest in the Travis # 1 Well and therefore do not share in production therefrom; Travis # 1 Well has been producing from the same common reservoir as the unproductive Hamilton 1-33 Well due solely to Diamond Shamrock's gross neglect; and Travis # 1 Well will drain all of the hydrocarbons from the reservoir to the detriment of counterclaimants. Id. at 59-61.
 
 
 7
 The Counterclaim alleged, based on log calculations and production in the area, that the reserves of Hamilton 1-33 Well and values to counterclaimants were: $906,100.00 to Zinke and Trumbo; $209,100.00 to Morris A. Richardson; $522,750.00 to John Hamilton; and $104,550.00 to Martha N. Francis. Id. at 61. A jury demand was made by the counterclaimants.
 
 
 8
 In Answer to the Counterclaim, Diamond Shamrock alleged that the Hamilton 1-33 Well "[i]s capable of producing gas in paying quantities from the Morrow formation, but that said well is shut in awaiting a pipeline connection" and that its every action with regard to Hamilton 1-33 Well has been that of a prudent operator, including every action necessary to market production from the well but, notwithstanding, no market has been located. Further, Diamond Shamrock denied that a replacement well cannot be drilled upon Section 33, and that production from the Travis # 1 Well has or will cause drainage to Section 33. Id. at 65-67.
 
 
 9
 Zinke and Trumbo filed an amendment to its Answer setting up Affirmative Defenses by virtue of an alleged oral agreement on February 16, 1982, with Diamond Shamrock "[a]s to the manner in which the subject well was to be completed and that Diamond Shamrock Corporation breached that agreement by completing the well in a manner different from that agreed to by Zinke & Trumbo, Ltd. and Diamond Shamrock Corporation with the result that the pay zone in the subject well was irreparably damaged and has subsequently been cemented off." Id. at 76. Zinke & Trumbo also filed a Second Amendment to Answer which alleged two additional affirmative defenses: (1) the offer of Zinke & Trumbo to participate in the completion attempt by Diamond Shamrock was conditioned upon a particular manner of completion which was rejected by Diamond Shamrock, thus relieving Zinke & Trumbo from any liability for completion costs, and (2) Diamond Shamrock's employees took bribes and kickbacks from suppliers and others concerning materials, supplies, and work, resulting in improper charges to Zinke and Trumbo. Id. at 78. An Amended Counterclaim was thereafter filed incorporating the aforesaid affirmative defenses with four additional causes of action, seeking punitive damages of $10 million. Id. at 80-92. These allegations were joined in denial by Diamond Shamrock's Answer. Id. at 101-109.A.
 
 First Trial
 
 10
 The case proceeded to trial on October 27, 1983. The jury returned a verdict on November 2, 1983, as follows:
 
 
 11
 (1) for Diamond Shamrock against Zinke & Trumbo for breach of the Joint Operating Agreement (balance owing of drilling and completion costs) in amount of $212,805.60;
 
 
 12
 (2) for Diamond Shamrock and against Zinke & Trumbo upon Zinke & Trumbo's claim for breach of a new agreement (no damages awarded);
 
 
 13
 (3) for Zinke & Trumbo upon its claim against Diamond Shamrock for gross negligence and/or willful misconduct in the operation of the well in amount of $995,196.00;
 
 
 14
 (4) for counterclaimants John Hamilton, Martha Francis and Morris Richardson against Diamond Shamrock for negligence in the operation of the well in amount of $971,179.00;
 
 
 15
 (5) for Diamond Shamrock and against counterclaimants John Hamilton and Martha Francis for breach of the implied covenant to market (no damages awarded); and
 
 
 16
 (6) for counterclaimants John Hamilton and Martha Francis against Diamond Shamrock for breach of the implied covenant to protect against drainage in the amount of $32,499.00 and punitive damages in amount of $1,000,000.00.
 
 
 17
 The parties did not object to the verdict form. (R., Vol. X, p. 43.) The court, prior to returning the jury, addressed counsel and stated that "[I] understand we have a verdict and I have sent for the jury. Due to the length of deliberation and the somewhat complexity of the verdict form, I will want to have a bench conference before I read and record the verdict and allow you all to examine it. That will be particularly true if there appears to be any inconsistencies in the verdict form." Id. at 45, 46. When the jury reported in, the jury's verdict was handed to the court and counsel were then called to the bench to examine the verdict before it was read and recorded. The following colloquy then occurred:
 
 
 18
 THE COURT: Any reason why the Court should not read and record the verdict?
 
 
 19
 MR. WATSON: (Counsel for Diamond Shamrock): I can think of a lot of reasons, but none that are valid.
 
 
 20
 Id. at 46.
 
 
 21
 Thereupon, the clerk read and recorded the verdict and the jury was polled. When the court inquired whether either party had any objection or any reason why the court should not then discharge the jury, respective counsel advised that there was none. Id. at 48. The jury was then discharged.
 
 B.
 Posttrial Proceedings
 
 22
 On November 14, 1983, Diamond Shamrock filed an "Alternative Motion for Judgment Notwithstanding the Verdict or for New Trial." (R., Vol. II, pp. 274-281.) In its Motion for New Trial, Diamond Shamrock relied upon the ground of inconsistent verdicts. Following hearing on the motion, the trial court, after Journal Entry of Judgment, entered its "Order Granting New Trial and Vacating Judgment" on January 11, 1984, based upon Diamond Shamrock's Motion for New Trial. Id. at 286.
 
 C.
 Second Trial
 
 23
 The second jury trial began on February 11, 1985, and on February 19, 1985, the jury returned a verdict in favor of Diamond Shamrock only on its claim against Zinke & Trumbo for breach of the Joint Operating Agreement in amount of $220,830.34. Thereafter, Zinke and Trumbo and the appellees filed a motion to reinstate the verdict in the first trial or, in the alternative, for new trial on the ground that the second verdict was defective in that the jury did not fill in any of the blanks pertaining to any of the counterclaims. On March 19, 1985, the trial court denied the motion to reinstate the first verdict or for new trial. However, thereafter, by order of April 18, 1985, the trial court made its Journal Entry of Judgment and, on its finding that the jury did not return a verdict on the counterclaims of John Hamilton and Martha Francis for breaches of the implied covenants to market and to protect against drainage, the court, on its own motion, ordered that a new trial be granted to John Hamilton and Martha Francis on their counterclaims for breach of the implied covenant to market and to protect against drainage. Id. at 493. In that Order, the trial court noted that its oral instructions to the jury may have been erroneous, leading the jury to fail to return a verdict either for or against John Hamilton and Martha Francis on their counterclaims for breaches of the implied covenants to protect against drainage and to market. Id.
 
 
 24
 At the hearing on the adequacy of the second jury verdict ordered by the trial court, Diamond Shamrock urged the court to stand by the general verdict. The trial court stated that, as between Diamond Shamrock and Zinke and Trumbo he had no difficulty because, by the jury verdict, "[Y]ou won the case ... and by so doing, the jury found that you drilled the well in a prudent way. You were not negligent, either grossly or otherwise" but "[I] do have serious reservations about the--you could be the most prudent operator in the world ... in drilling the well ... but still failed to market as the operator should do." (R., Vol. XVIII, p. 6.) The court concluded that it had erred in its oral instructions to the jury when "[I] told the jury if they found for the plaintiff [Diamond Shamrock] on the first item in the verdict, that ended it. And I just shouldn't have done it. Now, there's no way to cure my mistake. But I'm a little bit disappointed in you [counsel for counterclaimants] not jumping up and telling me that I was making a mistake, and I could have cured it in a moment." Id. at 15.
 
 II.
 This Appeal and Cross-Appeal
 
 25
 This appeal and cross-appeal is from a judgment entered April 18, 1985, following the second trial to jury and return of a general jury verdict with findings, which rendered all claims final except those at issue here. In that respect, the judgment certified the entry of final judgment for plaintiff-appellant Diamond Shamrock Corporation (Diamond Shamrock) and against all defendants except counterclaimants-defendants John Hamilton and Martha Francis. The court found that the jury failed to return a verdict on the counterclaims of John Hamilton and Martha Francis for breaches of the implied covenants to market gas and to protect against drainage. The judgment was certified as final pursuant to Fed.R.Civ.P. 54(b).
 
 III.
 Our Disposition
 
 26
 It is our view that the dispositive issue for our resolution is whether Diamond Shamrock's failure to object to the first trial jury's general verdict on the ground of inconsistency before the jury was discharged constituted a waiver of that challenge. We will hold that it did. This holding necessarily impacts upon the appeal in No. 85-1653 and the cross-appeal in No. 85-1765 docketed in this court, both of which arise from the final judgment of April 18, 1985, awarding Diamond Shamrock $220,830.34 on its breach of contract claim against Zinke and Trumbo, Ltd. (Zinke and Trumbo) and the adjudication that the defendant, Zinke and Trumbo, recover nothing on its counterclaim against Diamond Shamrock for gross negligence and that the counterclaimants, John Hamilton, Martha Francis and Morris Richardson recover nothing on their claim of negligence against Diamond Shamrock.
 
 
 27
 It is interesting to note that both parties urge that we hold that the verdict of a jury be upheld in those cases where a party does not object to the verdict form after the verdict is returned and before the jury is discharged.
 
 
 28
 Diamond Shamrock asserts that the counterclaimants waived any objection to the form of the general verdict returned by the jury in the second trial by failure to object, both at the time the court explained the verdict form to the jury and after the verdict was returned and the jury polled. (Brief of Appellant, Diamond Shamrock, pp. 13-15). Diamond Shamrock relies on Klapmeier v. Telecheck International, Inc., 482 F.2d 247 (8th Cir.1973) for the rule that (a) a jury's failure to find either for or against counterclaimants on their counterclaim constitutes an adverse finding against counterclaimants, and (b) that counterclaimants waived any objection to the form of the verdict by failing to object to the verdict form or the verdict as returned so as to move for its resubmission prior to the discharge of the jury in order to provide the trial court with the opportunity to correct any matters prior to the jury's discharge. Id.
 
 
 29
 Cross-appellants and appellees, Morris A. Richardson, John Hamilton and Martha Francis in turn assert that during the first trial, before the jury verdict was read and entered, it was shown to counsel for all parties, who were invited by the court to object to inconsistencies, and none was lodged. Notwithstanding, the trial court granted Diamond Shamrock's Motion for New Trial on the basis of inconsistent verdicts. Thus, they assert that failure to object to a jury verdict prior to discharge of the jury constitutes a waiver of inconsistency. (Brief of Cross-Appellants and Appellees, pp. 8-10.)
 
 
 30
 Fed.Rules Civ.Proc. rule 59(a) and (d), 28 U.S.C.A. provides, in relevant part:
 
 
 31
 (a) Grounds
 
 
 32
 A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; ...
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 (d) On initiative of court
 
 
 36
 Not later than 10 days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served, for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.
 
 
 37
 Fed.Rules Civ.Proc. rule 49(b), 28 U.S.C.A. provides:
 
 
 38
 (b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.
 
 
 39
 The above rules, and others, must be read and construed together and harmonized whenever possible.
 
 
 40
 We have observed that both parties, at the first trial, were called to the bench after the jury returned its verdict. The trial court had previously informed counsel that the jury's general verdict should be carefully examined and any objections thereto lodged. This procedure was followed. Diamond Shamrock's counsel did not object to the jury's verdict. The first contention raised by Diamond Shamrock as to alleged inconsistency in the jury verdict came only after the jury had been discharged. This challenge was posited in Diamond Shamrock's "Alternative Motion for Judgment Notwithstanding the Verdict or for New Trial," predicated upon the contention that the verdicts are inconsistent on their faces.
 
 
 41
 In Stancill v. McKenzie Tank Lines, Inc., 497 F.2d 529 (5th Cir.1974), the court, dealing with an alleged inconsistency in a general verdict observed:
 
 
 42
 Rule 49(b) does endorse a new trial as one option open to a trial court when an actual inconsistency does occur. But in determining whether rule 49(b) requires a new trial in this case, a number of serious questions arise ...
 
 
 43
 * * *
 
 
 44
 * * *
 
 
 45
 By failing to object to the form of the verdict and answers at the time they were announced by the jury, both parties waived any objection to inconsistencies under Rule 49(b) ... the trial judge was careful to solicit objections from both counsel after the verdict was rendered and the interrogatories answered.... Had an objection been raised as to the inconsistency of the answers at that time, the district court could have elected to "return the jury for further consideration of its answers and verdict...."
 
 
 46
 497 F.2d at pp. 533-35.
 
 
 47
 We agree with the reasoning of the Stancill court. In an analogous setting, we held in Kirkendoll v. Neustrom, 379 F.2d 694, 699 (10th Cir.1967), that appellant waived his objection to special interrogatories:
 
 
 48
 The record reflects that after the special answers and verdict were read, the court asked if there was any reason why the jury should not be discharged. Both appellant and appellee answered in the negative. The jury was discharged. Under this rule, [49(b) Fed.R.Civ.P.], as well as by acquiescence of counsel in the action of the court, no reversible error occurred....
 
 
 49
 Cundiff v. Washburn, 393 F.2d 505 (7th Cir.1968), dealt with the question whether a party who is disenchanted with the general verdict but who did not move for resubmission pursuant to Rule 49(b) before the jury was discharged waives the right to have alleged inconsistencies in the general verdict remedied by a new trial. The Cundiff court observed that our Kirkendoll v. Neustrom, supra, was "closely analogous," and held:
 
 
 50
 Consistent with the rationale of these cases, we hold that appellant waived any objection to the verdict on the ground of inconsistency with the special finding by failing to move the resubmission of the verdict and finding to the jury. Any other decision would hamper the just and efficient operation of the federal courts. It would encourage jury-shopping by litigants, permitting them to decide whether to take their chances on resubmitting the verdict and findings to the jury sitting or remain silent thereby allowing the entry of judgment and moving for a new trial before a new jury....
 
 
 51
 ... [t]he rule that objection on the ground of inconsistency is waived by failure to move for resubmission promotes the fair and expeditious correction of error. It requires the error be corrected in the proceeding in which it is made, by the jury which made it unless the trial court determines in the exercise of its discretion under Rule 49(b) to enter judgment on the special findings or to order a new trial.
 
 
 52
 Our interpretation of Rule 49(b), in the absence of objection by counsel, leaves to the trial court alone the discretion to choose the means of correcting inconsistency, subject to review by this Court on appeal.
 
 
 53
 393 F.2d at 506, 507. Accord: Itel Capital Corp. v. Cups Coal Co., Inc., 707 F.2d 1253 (11th Cir.1983) (appellants waived objection to alleged inconsistencies in verdict by failure to object at the time the verdict was rendered); Fernandez v. Chardon, 681 F.2d 42 (1st Cir.1982), affirmed, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983) (counsel waited until after the jury was excused before raising the inconsistency claim; defendants therefore held to have waived their right to have the general verdict set aside on this ground); Rowe International, Inc. v. J-B Enterprises, Inc., 647 F.2d 830 (8th Cir.1981) (trial court did not err in returning jury to correct a mistake in the verdict before accepting the verdict and discharging the jury on basis of inconsistent verdict); Skillin v. Kimball, 643 F.2d 19 (1st Cir.1981) (party cannot implant ground for appeal by failure to object to jury verdict under Rule 49 before jury is discharged); Ludwig v. Marion Laboratories, Inc., 465 F.2d 114 (8th Cir.1972); Barnes v. Brown, 430 F.2d 578 (7th Cir.1970) (failure of appellant to move to resubmit verdicts to jury for reconciliation and permitting judge to discharge the jury with inconsistent verdict standing constituted waiver of any objection to the inconsistency of verdict); Tennessee Consolidated Coal Co. v. United Mine Workers, 416 F.2d 1192 (6th Cir.1969), cert. denied, 397 U.S. 964, 90 S.Ct. 999, 25 L.Ed.2d 256 (1970). In Bass v. Dehner, 103 F.2d 28 (10th Cir.), cert. denied, 308 U.S. 580, 60 S.Ct. 100, 84 L.Ed. 486 (1939) we held that before declaring a conflict between special findings and a general verdict, an effort should be made to reconcile any apparent inconsistency.
 
 
 54
 With respect to answers inconsistent with the general verdict, it is recognized that the trial court has three courses of action available under Rule 49(b). The court may order the jury to deliberate further, order a new trial, or disregard the general verdict and order judgment on the basis of answers to interrogatories. Wright and Miller, Federal Practice & Procedure: Civil Sec. 2513. The first option was clearly available in the instant case. During the first trial, the court specifically invited counsel to carefully examine the jury's verdict before it was announced and entered and to voice any objections thereto prior to discharge of the jury. Diamond Shamrock's counsel did not object to the jury verdict until after the jury had been discharged, notwithstanding the trial court's caveat that any objections to the jury verdict should be lodged before the verdict was formally returned and entered. Supra, p. 1419. We hold that failure on the part of Diamond Shamrock's counsel to object to the jury verdict on the alleged ground of inconsistency constituted a waiver of such contention on appeal. Diamond Shamrock's failure to so object was, apparently, a measured, calculated trial tactic.
 
 
 55
 We are aware that the trial court could have, sua sponte, granted Diamond Shamrock a new trial pursuant to Rule 50(b). Kain v. Winslow Mfg., Inc., 736 F.2d 606 (10th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1360, 84 L.Ed.2d 381 (1985). Such action is required if a verdict reflects inconsistencies on its face indicating either that the jury was in a state of confusion or abused its power. Under such circumstances, not present here, a new trial must be granted. Global Van Lines, Inc. v. Nebeker, 541 F.2d 865 (10th Cir.1976); Hopkins v. Coen, 431 F.2d 1055 (6th Cir.1970); Cheney v. Moler, 285 F.2d 116 (10th Cir.1960) (verdict returned with "no damages" even though plaintiff lost ear as result of fight with defendant was nullity under the circumstances requiring retrial on all issues notwithstanding failure of plaintiff to object to the verdict). Unlike the determination in Cheney, the instant case is a proper case to invoke the harsh impact of the waiver rule.
 
 
 56
 In our view the trial court erred in setting aside the verdict of the jury returned at the first trial. The general verdict was not objected to prior to the jury's discharge. Contrary to Diamond Shamrock's contention, the verdict is not inconsistent on its face. The claimed inconsistency rests upon the jury's finding for Diamond Shamrock on its breach of contract claim against Zinke and Trumbo (balance owing for drilling and completion costs) and the express finding of negligence against Diamond Shamrock in the operation of the well in favor of Zinke and Trumbo and the royalty owners, Hamilton, Francis and Richardson. A verdict which resolves separate and distinct causes of action in favor of both parties to a lawsuit is not inconsistent on its face. We hold that a party's failure to object to a verdict on the ground of inconsistency prior to the jury's discharge waives his right to raise the issue in a posttrial motion or on appeal unless the verdict is inconsistent on its face so that entry of judgment upon the verdict is plain error. We therefore hold that the trial court erred in setting aside the jury's verdict upon a ground waived by Diamond Shamrock.
 
 
 57
 The trial court also erred in finding that the jury's verdict was inconsistent in fact. The claim of inconsistency advanced by Diamond Shamrock, adopted by the trial court, was that the jury, by finding for Diamond Shamrock on its contract claim impliedly found that Diamond Shamrock, as the operator under the Joint Operating Agreement, had performed the drilling and completion work in a good and workmanlike manner and, accordingly, could not have been liable on the tort claims advanced against it. Diamond Shamrock contended as follows:
 
 
 58
 The verdicts entered by the jury are inconsistent on their faces and indicate that the jury was either in a state of confusion or that the jury abused its power. Specifically, it is impossible for the jury to find that DIAMOND SHAMROCK performed conditions in a good and workmanlike manner and at the same time find that DIAMOND SHAMROCK had been negligent and grossly negligent. The verdict awarding DIAMOND SHAMROCK $212,805.60 under the Joint Operating Agreement is irreconcilably inconsistent with the verdict awarding ZINKE & TRUMBO, LTD. $995,196.00 for gross negligence or willful misconduct and verdict awarding John Hamilton, Martha Francis and Morris Richardson, $971,179.00 for negligence.
 
 
 59
 (R., Vol. II, pp. 274-75.)
 
 
 60
 The defect in this argument is that Diamond Shamrock's claim of inconsistency rests upon its contention that the jury, by its finding for Diamond Shamrock on its contract claim, impliedly found that Diamond Shamrock had performed its drilling and completion operations on Hamilton No. 1-33 well in a good and workmanlike manner. Such is not the case. Diamond Shamrock's theory of the case was that under the terms of the Joint Operating Agreement non-operators were unconditionally obligated to pay their proportionate share of the costs of drilling and completion. This was clearly evidenced by Diamond Shamrock's cross-examination of Mr. Robert M. Zinke, who, after stating that Zinke and Trumbo were obligated under the Joint Operating Agreement to pay their share of the costs of work done by Diamond Shamrock in a "good workmanlike manner" without "gross negligence or wilful misconduct" was asked:
 
 
 61
 Q. And does the operating agreement provide that if the work is not in a workmanlike manner or gross negligence occurs, that you're not obligated to pay?
 
 
 62
 A. I'm not Marvin Wiggly. I'm not an expert on operating agreements. I don't know. Possibly it does. I don't know.
 
 
 63
 Q. Well, let's look at it then. Now, on Page 1 of the accounting procedure, you're required to pay your invoices within fifteen days. If you have any questions, you can audit the account; isn't that right?
 
 
 64
 A. Yes, sir, that's correct.
 
 
 65
 Q. So payment is not excused because you decide on your own that the operator's been negligent.
 
 
 66
 A. That's true.
 
 
 67
 (R., Vol. VII, pp. 322-23.) And during closing argument, counsel for Diamond Shamrock argued that the terms of the Joint Operating Agreement Diamond Shamrock, as operator, had sole decision making authority in the drilling of the well and that Zinke and Trumbo's claim that Diamond Shamrock was negligent was not "an element of Diamond Shamrock's proof" and that Diamond Shamrock was obligated only to "show you that they complied with the contract." (R., Vol. X, pp. 8-11.)
 
 
 68
 The trial court accepted Diamond Shamrock's contention that if it had substantially complied with the Joint Operating Agreement as operator, Diamond Shamrock was contractually entitled to recover for the work done in the drilling of the well. The jury was so instructed. (R., Vol. II, pp. 430-31.) The court clearly instructed separately, without objection, on Diamond Shamrock's breach of contract claim and the counterclaims for gross negligence and negligence, and the general verdict contained findings on each. Thus, although each claim arose out of Diamond Shamrock's operation of the well, the parties, under their respective theories of the case, elected to permit the jury to treat the breach of contract claim of Diamond Shamrock against Zinke and Trumbo separate and distinct from the counterclaims. (See jury instructions 4, 5, 6, 7, 8 and 9, Vol. II, pp. 430-39.)
 
 
 69
 Thus, we conclude that there were no inconsistencies in fact in the jury's general verdict. The jury, as instructed, returned an award of damages for Diamond Shamrock and against Zinke & Trumbo on its breach of contract claim under the Joint Operating Agreement. By doing so, the jury adopted Diamond Shamrock's theory of the case on this claim, i.e., that as operator it was entitled to receive payment from Zinke and Trumbo for all costs and expenses not challenged under the audit provision of the Joint Operating Agreement. By the same token, the jury, in accord with the court's instructions, found for the defendant and counterclaimants on their claim of negligent and gross negligent operations of Diamond Shamrock and Diamond Shamrock's breach of implied covenant to protect against drainage and to market.
 
 
 70
 In effect, then, the jury's verdict "tracked" the theory-of-the-case exactly as Diamond Shamrock invited it to be considered by the jury. The record, largely due to Diamond Shamrock's direct and cross-examination, reflects that the contractual obligation of Zinke and Trumbo to Diamond Shamrock for proportionate share of drilling and completion costs was treated and considered by the jury independent of the negligence claims and the failure to market and to prevent drainage claims. With regard to the latter, a cause of action for breach of an implied covenant to prevent drainage does not require proof of negligent operations. Spaeth v. Union Oil Co. of California, 710 F.2d 1455 (10th Cir.1983); Dixon v. Anadarko Production Company, 505 P.2d 1394 (Okl.1972).
 
 
 71
 Thus, the claimed inconsistency is between verdicts resolving entirely separate and distinct causes of action. The verdicts on the counterclaims were not required to be consistent with the verdict on Diamond Shamrock's breach of contract claim because the parties and the court submitted the respective claims to the jury for separate, distinct consideration. Thus, there was no inconsistency on the face of the general verdict. The verdicts are not repugnant or in irreconcilable conflict. This trial involved separate causes of action and the relationship of the parties was not legally identical with regard to each cause of action.
 
 
 72
 Where several distinct causes of action, such as here, are tried together, verdicts awarding recovery to some of the parties on one theory or cause of action and to other parties on another theory or cause of action are not necessarily inconsistent. In those cases where the several causes of action are identical and defended on the same ground, a verdict for the plaintiff on one cause of action and for the defendant on another is inconsistent. Further, if two causes of action are of such a nature that recovery can be had only as to one, verdicts in favor of a plaintiff and against the defendants on both causes of action are inconsistent.
 
 
 73
 Notwithstanding the consistency among the parts of the verdict, we hold, in accord with Stancill v. McKenzie Tank Lines, Inc., supra, and the mandates of Rule 49(b), that under the facts and circumstances of this case, Diamond Shamrock's failure to object to the jury's general verdict with findings returned at the first trial prior to the jury's discharge constituted a waiver of any alleged inconsistencies in the damages awarded.
 
 
 74
 We REVERSE and REMAND with instruction that the district court reinstate the general verdict of the jury returned at the first trial and enter judgment thereon.
 
 
 75
 McKAY, Circuit Judge, concurring in part and dissenting in part:
 
 
 76
 I concur in the result reached by the majority and in the court's conclusion that it is possible to reconcile the apparent inconsistencies in the verdicts returned at the first trial. I have serious misgivings, however, about the majority's reliance on Rule 49(b) of the Federal Rules of Civil Procedure. In my view, Rule 49 does not apply in this case. I therefore dissent from the court's holding that Diamond Shamrock waived its right to object to inconsistencies in the verdicts by failing to object or move for resubmission before the jury was dismissed.
 
 
 77
 The facts which gave rise to this action are set out in the majority's opinion and to repeat them here would extend this opinion to unwarranted length. I think it is necessary, however, to set out in the margin the verdict form that was submitted to the jury in the first trial.[1]
 
 VERDICT
 
 78
 [Place either "plaintiff", "defendants", or "counterclaimants" in the first blank.]
 
 We, the jury, find as follows:
 
 79
 1. for the Plaintiff upon the claim by the plaintiff, Diamond Shamrock Corporation, for breach of the operating agreement and fix damages in the amount of $212,805.60;
 
 
 80
 2. for the Plaintiff upon the claim by the defendant, Zinke & Trumbo, Ltd., for breach of a new agreement and fix damages in the amount of $0.00;
 
 
 81
 3. for the Defendant upon the claim by the defendant, Zinke & Trumbo, Ltd., for gross negligence and/or willful misconduct in the operation of the well and fix damages in the amount of $995,196.00;
 
 
 82
 4. for the Counterclaimants upon the claim by the counterclaimants, John Hamilton, Martha Frances and Morris Richardson, for negligence in the operation of the well and fix damages in the amount of $971,179.00;
 
 
 83
 5. for the Plaintiff upon the claim by the counterclaimants, John Hamilton and Martha Frances, for breach of the implied covenant to market and fix damages in the amount of $0.00; and
 
 
 84
 6. for the Counterclaimants upon the claim by the counterclaimants, John Hamilton and Martha Frances for breach of the implied covenant to protect against drainage, and fix actual damages in the amount of $32,499.00 and punitive damages in the amount of $1,000,000.00 (one million dollars).
 
 
 85
 Nov. 2, 1983 [signed]
 
 
 86
 ------------ --------
 
 Date Foreman
 
 87
 Throughout the majority opinion, the court refers to the jury's verdict in the first trial as a "general verdict." Although nothing in the court's opinion suggests that this "general verdict" was accompanied by responses to "written interrogatories," the court relies on Rule 49(b) of the Federal Rules of Civil Procedure to reach the conclusion that "the instant case is a proper case to invoke the harsh impact of the waiver rule." At 1423. What the majority fails to recognize is that Rule 49(b) governs only when the jury returns a general verdict accompanied by responses to "written interrogatories upon one or more issues of fact." Where, as here, the jury returns general verdicts on separate claims and counterclaims and makes no written findings on issues of fact, Rule 49(b) does not apply.
 
 
 88
 Rule 49[2] grants the trial court the discretion to use one of two different procedures as an alternative to submitting a civil case to the jury for a general verdict. In his oft-cited article on the use of special verdicts in federal court, former Chief Judge John R. Brown of the Fifth Circuit has observed: "The distinction between F.R.Civ.P. 49(a) and 49(b) must be--but sometimes is not--made.... Neither Courts nor Judges are immune." Brown, Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 338, 339 & n. 5 (1967) (footnotes omitted). The majority's opinion demonstrates that the same can be said for the distinction between separate general verdicts and the alternative verdicts that are authorized by Rule 49.
 
 
 89
 In order to understand why I think Rule 49 does not apply in the instant case, it is necessary to understand when the Rule does apply. Rule 49(a), entitled "Special Verdicts," allows the court "to dispense with the general verdict altogether, and to submit the various fact issues in the case to the jury in the form of individual fact questions, on each of which the jury is to return a special verdict." 9 C. Wright and A. Miller, Federal Practice and Procedure Sec. 2501, at 485 (1971). Judge Brown, who has been described as "the strongest advocate of Rule 49(a) on the bench," id. at Sec. 2505, at 495, explains the distinction between Rule 49(a) and Rule 49(b):
 
 
 90
 Rule 49(b) offers, so far as I can see, nothing but trouble because it seeks to meld a general verdict and special answers with the high likelihood of conflict which extinguishes both. Rule 49(a), on the other hand, if used with skill and resourcefulness, melds the general charge (not verdict) with the special answers to specific controlling issues of fact or legal-fact. My approach recognizes that in an appropriate form and way the Judge gives a firm, detailed explanation of controlling principles specifically related to the case, almost as he would for a general verdict. The difference is that under the 49(a) technique the jury, applying these instructions, records its conclusions with precision, not in the conglomerate ambiguity of "for the plaintiff," "for the defendant," or the like.
 
 
 91
 Brown, 44 F.R.D. at 339-40 (footnote omitted).
 
 
 92
 Rule 49(a) speaks in terms of a "special verdict in the form of a special written finding upon each issue of fact." Thus, "[t]he rule contemplates that only factual questions will be submitted to the jury to which the judge will then apply the law, supplementing, if necessary, any factual determinations not submitted to the jury." Quaker City Gear Works, Inc. v. Skil Corp., 747 F.2d 1446, 1453 (Fed.Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985) (citing 5A Moore's Federal Practice, p 49.02, at 49-8 (2d ed. 1984).[3] Similarly, Rule 49(b), entitled "General Verdict Accompanied by Answer to Interrogatories," permits the trial court to request the jury to return a general verdict accompanied by responses to "written interrogatories upon one or more issues of fact."
 
 
 93
 My objection to the majority's application of Rule 49 in this case is that the verdict returned by the jury in the first trial did not resolve specific issues of fact or even mixed questions of law and fact. Rather, the jury merely found "for the plaintiff," "for the defendant," or "for the counterclaimants" on six separate claims and counterclaims. Thus, the verdict in this case does not fit comfortably within the framework of either Rule 49(a) or Rule 49(b). Rule 49(a) is ruled out for two reasons: (1) the jury did not make written findings of fact; and (2) the jury's findings "for the plaintiff," "for the defendant," or "for the counterclaimants" on each claim and counterclaim can only be described as a general verdict. See Brown, 44 F.R.D. at 340. And, although Rule 49(b) refers to a "general verdict," that subdivision cannot apply either because the jury did not respond to "written interrogatories upon one or more issues of fact."
 
 
 94
 Other courts have declined to apply Rule 49 where the jury's verdict did not resolve specific "issues of fact." For example, in Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984), the court said:
 
 
 95
 The challenged "interrogatory" is inartfully labeled as such by the parties. It sets forth a standard of proof ("proved by clear and convincing evidence") in relation to a legal conclusion ("invalid on the ground of obviousness"). Yet legal conclusions are not proved; facts are. Interrogatories, as such, are best employed in seeking answers to factual questions, the answers to which lead to or require a legal conclusion.
 
 
 96
 ....
 
 
 97
 Though labeled as "interrogatories", the ten questions put to the jury were designed to elicit, and were treated by all concerned as having elicited, a ten-part verdict.... The jury's responses were not special verdicts, because they were not simply "written finding[s] upon each issue of fact". Rule 49(a), Fed.R.Civ.P. Nor was there a single general verdict, per se, accompanied by "written answers" to "one or more issues of fact, the decision of which is necessary to a verdict". Rule 49(b) Fed.R.Civ.P. Nonetheless, as above indicated, the parties have correctly viewed the jury's ten responses as the equal of a general verdict for Stucki.
 
 
 98
 Id. at 1515-16. Similarly, in Merchant v. Ruhle, 740 F.2d 86 (1st Cir.1984), in considering an alleged inconsistency in two verdicts, the court said:
 
 
 99
 [W]e first must determine whether we are dealing with two general verdicts or a general verdict and answers to interrogatories under Fed.R.Civ.P. Rule 49(b). If the latter applies, we must scrutinize the negligence and seaworthiness findings for irreconcilable inconsistency. If we are dealing with general verdicts, we do not have the compulsion of a procedural rule to determine such inconsistency.
 
 
 100
 ....
 
 
 101
 We would be reluctant to interpret Rule 49(b) as applicable. First, there is no "general verdict" even if the jury's response qualify [sic] as answers to "interrogatories upon one or more issues of fact". Second, the first and second questions and answers are in such comprehensive and conclusory terms as to constitute essentially general verdicts on the two counts of the complaint in all respects but damages.
 
 
 102
 Id. at 88-89 (footnotes and citations omitted). See also Cunningham v. M-G Transport Services, Inc., 527 F.2d 760 (4th Cir.1975) (per curiam) (instructing district courts to put special interrogatories in the form of questions rather than affirmative statements). In Miller v. Premier Corp., 608 F.2d 973 (4th Cir.1979), the trial court instructed the jury to return one of four alternative verdict forms. The Fourth Circuit explained the procedure as follows:
 
 
 103
 In an effort to aid the jury in its resolution of the many issues presented in this multi-claim, multi-party action, the district court decided to give the jury a choice of four alternative general verdict forms to return. Only one was to be returned and the court's instructions were designed to present the issues in a way related to the different verdicts so that the one proper choice could be dictated by the jury's resolution of the issues. One verdict was to be returned if the jury found for the plaintiffs on the securities fraud claims. Another was to be returned if the jury found for the plaintiffs against Premier on the common law fraud claim. A third was to be returned if the jury found for the defendant Premier on its counterclaim. The fourth was to be returned if the jury found against plaintiffs on all their claims, and against defendant Premier on its counterclaim. (a general "for the defendant" verdict).
 
 
 104
 Id. at 982-83 (footnote omitted). The court in Miller noted that this procedure "was not the special verdict submission authorized by Fed.R.Civ.P. 49(a), but a general verdict submission in which various discrete general verdict choices were given as alternatives." Id. at 982 n. 10.
 
 
 105
 Though I am convinced that these cases correctly drew the distinction between separate general verdicts and verdicts governed by Rule 49, Judge Brown's opinion in Mercer v. Long Manufacturing N.C., Inc., 665 F.2d 61 (5th Cir.), reh'g denied, 671 F.2d 946 (1982) (per curiam), suggests that the distinction is not as clear as one might think. In Mercer, the jury was instructed to find for the plaintiff or the defendant on three separate theories of liability: breach of warranty, deceptive trade practices, and strict liability. The jury found for the plaintiff on two theories of liability and assessed damages against the defendant. On appeal, the plaintiff asserted that the verdict was not governed by Rule 49(a) because it was not a special verdict, but rather three separate general verdicts, one for each of three separate theories of liability. In his opinion for the court, Judge Brown rejected this argument, describing the submission to the jury as a "special verdict consisting of four interrogatories under F.R.Civ.P. 49(a)." Mercer, 665 F.2d at 64 (footnote omitted). Judge Brown explained:
 
 
 106
 Although the interrogatories included three bases for liability, we find that the submission was pursuant to Fed.R.Civ.P. 49(a). No general verdict was rendered by the jury, and the District Court entered judgment only after applying the treble damage provisions of the DTPA, both factors pointing against finding a submission under F.R.Civ.P. 49(b).
 
 
 107
 Mercer, 665 F.2d at 65. Although Judge Brown may well be the leading scholar on the use of special verdicts in federal court, his application of Rule 49(a) in Mercer appears to be inconsistent with his description of Rule 49(a) as a technique whereby the jury, applying the court's instructions, "records its conclusions with precision, not in the conglomerate ambiguity of 'for the plaintiff,' 'for the defendant,' or the like." Brown, 44 F.R.D. at 340. Although Mercer is distinguishable from the instant case,[4] I must concede that Judge Brown's opinion in Mercer supports the majority's application of Rule 49. But even if I am wrong in believing that Rule 49 should not apply here, Mercer makes clear that the majority is also wrong in analyzing this case under Rule 49(b) instead of Rule 49(a). Here, the jury did not return a single general verdict but instead returned separate verdicts on each claim or counterclaim.
 
 
 108
 The distinction between Rule 49(a) and Rule 49(b) is important in this case because of the majority's adoption of a "waiver rule" where counsel fails to raise the issue of inconsistent verdicts before the jury is discharged. I would not hesitate to apply a "waiver rule" in a case governed by Rule 49(b).[5] The cases cited by the majority provide ample support for such a rule. But I am not aware of any case where the "waiver rule" has been applied in the context of Rule 49(a).[6] Indeed, the Fifth Circuit considered this issue on petition for rehearing in Mercer, and concluded that, in cases involving submission pursuant to Rule 49(a), objections to inconsistencies in the verdicts are not waived by failure to present them before the jury is discharged. Mercer, 671 F.2d 946, 947-48 (5th Cir.1982) (per curiam on petition for reh'g). The court explained:
 
 
 109
 Rule 49(b) specifically states that when the "answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial." There is no such specific direction encompassed within Rule 49(a).
 
 
 110
 Id. at 948 n. 1. See also Ladnier v. Murray, 769 F.2d 195, 198 n. 5 (4th Cir.1985); Alverez v. J. Ray McDermott & Co., Inc., 674 F.2d 1037, 1040-41 (5th Cir.1982). Though I would have considerable difficulty in applying Rule 49 to this case, I am persuaded by Mercer that if this case can be made to fit within the framework of Rule 49, it must be under subdivision (a) rather than subdivision (b). Accordingly, I would not hold, as does the majority, that by failing to move for resubmission to the jury on the basis of inconsistencies in the verdicts, Diamond Shamrock has waived that issue on appeal.
 
 
 111
 I fully concur, however, with the majority's view that it is possible to reconcile the apparent inconsistencies in the verdicts. "In reviewing a verdict for inconsistency, a court has a duty under the seventh amendment to reconcile the answers and uphold the verdict if that is at all possible." Crossland v. Canteen Corp., 711 F.2d 714, 725 (5th Cir.1983); see also Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); Burger King Corp. v. Mason, 710 F.2d 1480, 1489 (11th Cir.1983); Mercer v. Long Manufacturing, N.C., Inc., 665 F.2d 61, 65-66 (5th Cir.), reh'g denied, 671 F.2d 946 (5th Cir.1982). "[I]f there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." Griffin v. Matherne, 471 F.2d 911, 915 (5th Cir.1973).
 
 
 112
 Not only the trial court, but this court as well, has a constitutional duty to reconcile apparent inconsistencies in the jury's verdicts, if at all possible, before we are free to disregard those verdicts and affirm the trial court's grant of a new trial. Gallick v. B & O Railroad Co., 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); Gross v. Black and Decker, Inc., 695 F.2d 858, 867 (5th Cir.1983). Although the jury's verdicts could easily be construed as inconsistent, "a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). Because the trial court could have harmonized the apparently conflicting findings of the jury but failed to do so, I would hold that the trial court abused its discretion when it set aside the jury verdict and ordered a new trial.
 
 
 113
 Although I disagree with the rationale adopted by the majority for its holding, I fully concur in the court's judgment reinstating the jury verdict returned at the first trial and entering judgment thereon.
 
 
 114
 TACHA, Circuit Judge, concurring.
 
 
 115
 I concur only in the portion of the court's opinion that finds that the verdicts in the first trial were not inconsistent and therefore should be reinstated. I think it is unnecessary to reach the Rule 49 question and therefore decline to express an opinion on that issue.
 
 
 
 *
 2 Rule 49. Special Verdicts and Interrogatories
 (a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.
 (b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.
 
 
 [3]
 Under a precise reading of Rule 49(a), a "special verdict" seeks resolution of only factual issues. Some courts, however, have approved the use of Rule 49(a) to resolve mixed questions of law and fact. Quaker City Gear Works, 747 F.2d at 1453. See also Landy v. Federal Aviation Administration, 635 F.2d 143, 147 (2d Cir.1980), aff'd, 705 F.2d 624, cert. denied, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983); Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 715 (6th Cir.), cert. denied, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975)
 
 
 [4]
 In Mercer, the jury was asked to return separate verdicts on different theories of liability and to assess the total damages, if any, for the plaintiff. Here, in contrast, the jury was asked to return separate verdicts on each claim and counterclaim and to assess damages with respect to each
 
 
 [5]
 This is not to say, however, that I would join the majority in holding that, because Diamond Shamrock waived its objection to inconsistencies in the verdicts, the trial court does not have the discretion under Rule 59 of the Federal Rules of Civil Procedure to order a new trial on that same ground. In every case cited in the majority opinion, the "waiver rule" was invoked by the appellate court to affirm the trial court's denial of a motion for new trial. I am not aware of any case where the "waiver rule" has been applied to reverse the trial court's grant of a new trial on the grounds of inconsistent verdicts. The majority's application of the "waiver rule" in this context impinges on the trial court's broad discretion under Rule 59(d) to grant a new trial sua sponte. In commenting on the breadth of the trial court's discretion, this court has explained:
 Rule 59 F.R.Civ.P., 28 U.S.C.A., provides that a new trial may be granted in jury trials "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The rule makers did not attempt to delineate all of the reasons, but obviously had reference to grounds for granting new trial as at common law. Indeed, the Seventh Amendment to the Constitution provides that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." And, Professor Moore says that the Seventh Amendment is the only present limitation upon the reexamination of facts found by a jury. See Moore's Federal Practice, Vol. 6, p. 3733, Sec. 59.05(2). Long before the adoption of the Seventh Amendment, common law courts were granting motions for new trial upon any grounds which, in the sound judgment of the trial court, were in the interest of the proper administration of justice. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350....
 ... [T]he granting of a new trial involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all the reasons which inhere in the integrity of the jury system itself. Felton v. Spiro, 6 Cir., 78 F. 576; Aetna Cas. & Surety Co., v. Yeatts, supra.
 Tidewater Oil Co. v. Waller, 302 F.2d 638, 642-43 (10th Cir.1962).
 
 
 [6]
 The First Circuit applied the "waiver rule" in Skillin v. Kimball, 643 F.2d 19, 19-20 (1st Cir.1981). It is not clear from the court's opinion whether the submission in that case was pursuant to Rule 49(a) or Rule 49(b). However, the cases cited by the court involved submission under Rule 49(b). Other courts have interpreted Skillin as a Rule 49(a) case but have declined to follow it. See Ladnier v. Murray, 769 F.2d 195, 198 n. 5 (4th Cir.1985) (refusing to follow Skillin ); Bates v. Jean, 745 F.2d 1146, 1150 (7th Cir.1984) (not reaching the question whether the "waiver rule" applies to Rule 49(a)); Mercer v. Long Mfg. NC., Inc., 671 F.2d 946, 948 n. 1 (5th Cir.1982) (per curiam on petition for reh'g) (refusing to follow Skillin )
 Our decision in Bell v. Mickelsen, 710 F.2d 611 (10th Cir.1983), is not to the contrary. Although we cited Skillin with approval in that case, we did not characterize Skillin as a Rule 49(a) case. Id. at 616. Moreover, we did not decide in Bell whether counsel's failure to object to inconsistencies in the special verdicts precluded appellant from raising that issue on appeal. We held only that ambiguities in the jury instructions and the special verdict questions were waived by counsel's failure to object at trial. Id. at 616.